IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TERRI PEPPER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-22-2912 |
| § | |
| GVG CAPITAL LLC d/b/a WeBuy-Homes- § | |
| 4Cash.org, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

Terri Pepper sued GVG Capital, asserting that it violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and the Texas Business and Commercial Code, § 302.101 *et seq.* (Docket Entry No. 11). GVG Capital moves to dismiss, arguing that Pepper has not alleged that GVG Capital made unsolicited communications or engaged in telemarketing as defined by the Telephone Consumer Protection Act, and that the provisions of the Texas Business and Commercial Code apply only to telephone calls and not text messages. (Docket Entry Nos. 12, 29). Pepper has responded. (Docket Entry No. 20). Based on the pleadings and the applicable law, the court grants the motion, dismissing the state-law claims with prejudice because amendment would be futile, and dismissing the federal claim without prejudice and with leave to amend by February 24, 2023. The reasons are stated below.

**I.   Legal Standard**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does

not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted lawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Proj., Inc. v. Lincoln Prop. Co*., 920 F.3d 890, 900 (5th Cir. 2019).

**II.     Analysis**

GVG Capital is "a real estate lead generator in the business of acquiring consumer data to assist investors and realtors to buy and sell homes, for profit." (Docket Entry No. 11 ¶ 15). GVG Capital's website, "webuyhomes4cash," states that "[i]nformation submitted on this site will be sent to a network which consists of real estate investors, real estate agents, and direct buyers." (*Id.* ¶ 16). Consumers who wish to contact GVG Capital transmit their personal data, and GVC sends

the date to potential buyers. (*Id.* ¶ 17). GVG Capital requires persons transmitting their data to verify that they have no "exclusive contractual or other arrangement with any real estate professional." (*Id.* ¶ 18). Although the website states "[w]e are looking to buy homes in your area," (Docket Entry No. 11-1), "we" apparently refers to the investors, agents, or direct buyers to whom GVG Capital transmits the consumer's information, and not to GVG Capital itself.

Pepper alleges that she registered her cell phone with the Federal Do Not Call Registry in December 2004. (Docket Entry No. 11 ¶ 13). She alleges that neither she nor her husband consented to receiving calls or text messages from GVG Capital or had any established business relationship with GVG Capital. (*Id.* ¶¶ 20, 22). Pepper alleges that GVG Capital sent multiple text-message solicitations to her cell phone from April through July 2022. (*Id.* ¶¶ 23, 28). GVG Capital did not respond to Pepper's requests that it stop its behavior. (*Id.* ¶ 32). Pepper alleges that GVG Capital has not registered as a telephone solicitor with the Texas Secretary of State. (*Id.* ¶ 35).

The TCPA prohibits persons or entities from making telephone solicitations to telephone subscribers who have registered their telephone numbers with the National Do-Not-Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c). The implementing regulations also prohibit the making of telemarketing calls unless the person or entity making the calls maintains a list of persons who have requested not to receive calls from that person or entity. 47 C.F.R. § 64.1200(d). The statute provides a private cause of action. 47 U.S.C. § 227(b)(3).

"Telephone solicitations" are defined by regulation as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(15). "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of

encouraging the purchase or rental of, or investment in, property, goods or services, which is transmitted to any person." *Id.* § 64.1200(f)(13).

GVG Capital argues that it has not made any "telephone solicitation" to Pepper because its calls "only offered to buy something"—not sell something. (Docket Entry No. 12 at 4). GVG Capital argues that the regulation applies only to calls "encouraging *the purchase*" of property, goods, or services. GVG Capital cites *Knutson v. Blue Light Sec., Inc.*, 17-cv-134, 2018 WL 1172611 (S.D. Cal. Mar.6, 2018), and *Jance v. Homerun Offer LLC*, No. 20-cv-482, 2021 WL 3270318 (D. Ariz. July 30, 2021), in support of its interpretation of the regulation. (*Id.*) at 4–5.

Pepper cites to other district court decisions in response. (*Id.* at 13–14 (discussing *Buja v. Novation Capital, LLC*, No. 15-cv-81002, 2017 WL 10398957 (S.D. Fla. Mar. 30, 2017), and *Anderson v. Catalina Structured Funding, Inc.*, 2021 WL 8315006 (W.D. Mich. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 3643733 (W.D. Mich. Aug. 24, 2022)). Pepper also points to the FCC's rejection of an exemption to the regulations advocated by the National Association of Realtors. (*Id.* at 10). In its rejection, the FCC wrote, "we clarify that a telephone solicitation would include calls by real estate agents to property owners for the purpose of offering their services to the owner." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3793 (F.C.C. 2005).

Although Pepper cites the *Anderson* decision, applying the same analysis here supports dismissing Pepper's claims under the Telephone Consumer Protection Act. *Anderson* concerned solicitations made by Catalina, a company that purchased structured settlements. Catalina argued that its solicitations were straightforward entreaties for the plaintiff to sell her settlement rights. *Anderson*, 2021 WL 8315006, at *4. The plaintiff argued that "Catalina actually performs services for payees [that is, parties selling their settlement rights] and charges them fees through discounted

4

rates on the lump sum payments [for the settlements] it makes." *Id.* Considering these arguments, the court wrote,

> Catalina's argument sounds a little like a real estate buyer's agent who tells his or her client that the home sellers will pay the fees associated with the buyer's agent's services, rather than the buyer. That is ridiculous, of course: the buyer could offer to pay less for the house if the seller did not have to pay the buyer's agent's fees. Here, too, just because the fees may be taken out of the lump sum payment to the payee rather than itemized does not mean that no fees were charged in connection with the transaction. But the real estate broker analogy is not perfect: Catalina is not a broker—it is the principal buying the property in the transaction. One might argue that the "services" Catalina performs—processing payment applications, computing the present value of the structured settlement, filing all necessary legal documents, and the like—are equally beneficial, if not more so, to Catalina, for without them, Catalina could not accomplish its business objective of purchasing structured settlements.

*Id.* at *5. The court looked to the substance of the transaction. The court stated that "Catalina called Anderson to offer her the service of turning a long-term income stream into immediate cash," and that "the question of whether the payee pays the fees for services separately from an itemized list or as part of a reduced lump sum payment is irrelevant to the question of whether the payee pays fees as part of the transaction." *Id.* at *6. The court concluded that Catalina had solicited the purchase of its services with respect to purchasing the plaintiff's structured settlement; its payment was a discount on the present value of the settlement. *Id.*

In *Anderson*, Catalina was both the service provider and the purchaser. The same cannot be said of GVG Capital. Pepper alleges only that "Defendant is a real estate lead generator in the business of acquiring consumer data to assist investors and realtors buy and sell homes, for profit." (Docket Entry No. 11 ¶ 15). Pepper alleges that GVG Capital acts "on behalf of real estate agents and investors." (*Id.* ¶ 19). Pepper does not allege that a consumer pays for any part of the services GVG Capital offers, whether through the payment of fees or by providing data at a discount. GVG Capital's website is "WeBuyHomes4Cash," but the complaint does not allege that GVG Capital offers to purchase homes, in contrast to the role Catalina played in purchasing structured

5

settlements. Pepper alleges only that GVG Capital seeks to acquire data on behalf of others seeking to purchase structured settlements. The allegations do not support an inference that GVG Capital is offering a service to Pepper in exchange for any payment.

Pepper's reference to the FCC communication does not help her argument. The FCC stated that the statute "would include calls by real estate agents to property owners for the purpose of offering their services to the owner." *In re Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. at 3793. Those agents would presumably offer their services to the property owner with the expectation of compensation when the sale of the property closed. In that same document, the FCC stated that "calls by real estate agents who represent only the potential buyer to someone who has advertised their property for sale . . . do not constitute telephone solicitations." *Id.* Pepper's complaint alleges the kind of calls that the FCC stated are not covered by the Telephone Consumer Protection Act.

Pepper also brings a claim under section 302.101 of the Texas Business and Commercial Code, which states:

> (a) A seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made.
>
> (b) A separate registration certificate is required for each business location from which a telephone solicitation is made.

"'Telephone solicitation' means a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." TEX. BUS. & COM. CODE § 302.001(7). An "item" may be a "property or service." *Id.* § 302.001(1). "Telephone call" is not defined in the Code.

GVG Capital argues that it did not urge Pepper to buy anything but only to "sell an item." (Docket Entry No. 8 at 8). But section 302.001 defines a telephone solicitation as an attempt to "induce a person to . . . *receive* an item"—not only to purchase an item. An item may be a

6

"service." GVG Capital solicited Pepper to purchase GVC Capital's service of connecting potential sellers of property to potential buyers.

GVG Capital also argues that the Texas statute does not apply to unsolicited text messages, only to telephone calls. (Docket Entry No. 8 at 8). The parties have not cited, and the court has not found, authority from the Texas courts construing the meaning of "telephone call" as used in section 302.001(7). GVG Capital points to *Powers v. One Techs., LLC*, No. 3:21-cv-2091, 2022 WL 2992881 (N.D. Tex. July 28, 2022), holding that the Texas statute did not apply to text messages. In *Powers,* the court noted that, while Chapter 304 was amended in 2009 to provide a definition of "telephone call" encompassing text messages,[1] the legislature did not similarly amend Chapter 302. *Id.* at *3.

Pepper points to the provision of Chapter 302 stating that the chapter "should be liberally construed and applied to promote its underlying purpose to protect persons against false, misleading, or deceptive practices in the telephone solicitation business." TEX. BUS. & COM. CODE § 302.003. Pepper argues that, for a consumer, the differences between receiving an unsolicited phone call and an unsolicited text message are immaterial. (Docket Entry No. 20 at 22). Pepper argues that the Texas statute should be applied the same way as the federal Telephone Consumer Protection Act, where "call" encompasses text messages.

The revisions to Chapter 304 addressed by the district court in *Powers* were made as part of Texas's statutory revision program, which directed the Legislative Council to "clarify and simplify the statutes and to make the statutes more accessible understandable, and usable." TEX.

---

[1] The court notes that while the parties and the *Powers* court discuss the meaning of the word "call," the Chapter 302 defines "telephone solicitation" as a "telephone call"—"call" is never used without an immediately preceding "telephone." TEX. BUS. & COM. CODE § 302.001(7). Chapter 304 defines "telephone call," not "call." *Id.* § 304.002(10).

7

GOV. CODE § 323.007(a). That provision states that "[w]hen revising a statute, the council may not alter the sense, meaning, or effect of the statute." *Id.* § 323.007(b). There does not appear to be legislative history discussing the intent of the revisions to Chapter 304 beyond the statements in the Government Code. If anything, the amendment of Chapter 304 demonstrates that the Texas legislature already understood "call" to encompass text messages and amended Chapter 304 to clarify that meaning.

On the other hand, the Texas Supreme Court has held that section 323.007 of the Government Code does not control a court's construction of a statute when the revisions enacted through the Legislative Council's revision program create unambiguous substantive changes in the law. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999) ("Nor can the Code Construction Act's directive to the Legislative Council to refrain from changing the sense, meaning, or effect of a previous statute be used as a basis to alter the express terms of a code that the Legislature enacts as law, even when the Council's language does change the prior, repealed law." (internal citation omitted)). The "specific, unambiguous statutes" enacted by the Legislative "are the current law and should not be construed by a court to mean something other than the plain words." *Id.*

The Texas Supreme Court's holding in *Fleming* suggests that this court should not consider the legislative history of Chapter 304 of the Business and Commercial Code, including the reference to the section 323.007 of the Government Code, if "telephone call" is unambiguous. No party has argued that phrase is ambiguous. The plain meaning of "telephone call" does not encompass text messages. While the word "call," used alone, may be ambiguous when used in common contexts ("Call me when you're ready to leave" may include a text message indicating readiness), "telephone call," as a phrase, is not. The placement of "telephone" before "call"

indicates a particular kind of communication and removes whatever ambiguity might be present with the word "call," used alone.

The court dismisses Pepper's state-law claim with prejudice because amendment would be futile.

### III.     Conclusion

The court grants the motion. Pepper's Telephone Consumer Protection Act claim is dismissed without prejudice, and with leave to amend by **February 24, 2023**. Pepper's state-law claim is dismissed with prejudice because amendment would be futile.

SIGNED on January 17, 2023, at Houston, Texas.

                                             Lee H. Rosenthal
                                             United States District Judge