UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TERRI PEPPER, | § § § | |
| Plaintiff, | § § | Civil Action No. 4:22-CV-02912 |
| v. | § § § | |
| GVG CAPITAL LLC d/b/a WeBuy-Homes-4Cash.org, | § § § | Chief Judge Lee H. Rosenthal |
| | § § | Jury Trial Demanded |
| Defendant. | § § § | |

**SECOND AMENDED COMPLAINT**

Plaintiff, Terri Pepper ("Pepper" or "Plaintiff"), by and through her attorneys, Kimmel & Silverman, P.C., alleges the following against Defendant, GVG Capital LLC d/b/a WeBuy-Homes-4Cash.org ("GVG" or "Defendant"):

1. Plaintiff's Second Amended Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*.

**JURISDICTION AND VENUE**

2. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-questionsubject-matter jurisdiction to hear private civil suits under the TCPA).

3. This Court has personal jurisdiction over Defendant because Defendant is headquartered in the State of Texas and a substantial portion of the occurrences and events

1

underlying this litigation occurred in the State of Texas.

4. Plaintiff experienced the harms associated with the unlawful activities within this District.

5. Venue is proper under 28 U.S.C. § 1391(b)(1) and 1391(b)(2).

## PARTIES

6. Plaintiff is a natural person residing in The Woodlands, Texas 77354.

7. Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

8. Defendant is a business entity with a mailing address at 4305 Windsor Centre Trail, #300, Flower Mound, Texas 75028.

9. Defendant is a "person" as that term is defined by 47 U.S.C. § 153(39).

10. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## FACTUAL ALLEGATIONS

11. At all times relevant hereto, Plaintiff owned a cellular telephone with the number (806) XXX-0401.

12. Plaintiff used that cell phone for residential purposes.

13. Plaintiff registered her cell phone number on the Federal Do Not Call Registry as of December 15, 2004.

14. Plaintiff registered her number on the Do Not Call Registry in order to obtain solitude from unwanted telemarketing calls.

15. Defendant is in the business of offering its home buying services to homeowners, on behalf of real estate investors and brokers.

16. The "webuyhomes4cash" website described its business model ono its homepage

"Information submitted on this site will be sent to a network which consists of real estate investors, real estate agents, and direct buyers." A true and correct copy of a printout from the "WeBuy-Homes-4Cash.org" webpage is attached as Exhibit "A."

17. The terms and conditions for "WeBuyHomes4Cash" require the consumer to transmit his or her personal data, in exchange for purported assistance from "WeBuyHomes4Cash" with the consumer's efforts to sell his or her home. A true and correct copy of the "WeBuy-Homes-4Cash.org" terms and conditions is attached as Exhibit "B." The terms and conditions provide in relevant part:

> To gain access to our services, you must submit certain information about yourself and the home you wish to sell, which information will be used by webuyhomes4cash.org and such affiliates of webuyhomes4cash.org to assist you in the home selling process.

*See* Ex. B, p. 1: "purpose of our website."

18. In order to assure "WeBuy-Homes-4Cash.org" is not encroaching on the territory of other real estate agents/professionals, it requires the homeowner to confirm: "You do not have an exclusive contractual or other arrangement with any real estate professional." *See* Ex. B, p. 1: "Obligations of Home Sellers Registered with webuyhomes4cash."

19. While Terri Pepper, and her husband are and were homeowners, they were not interested in selling their home. Neither Pepper or her husband consented to receiving calls or text messages from "WeBuy-Homes-4Cash.org", or any other similar company.

20. In fact, neither Plaintiff or her husband listed or advertised their home for sale *any time in the past decade*.

21. Neither Pepper or her husband had an established business relationship with GVG, or its d/b/a "WeBuy-Homes-4Cash.org."

3

SECOND AMENDED COMPLAINT

22. Nonetheless, Defendant sent a series of un-consented text messages to Plaintiff's cell phone from April of 2022 through July 2022 to solicit its services to Pepper.

23. To the extent there is any doubt as to whether the subject text messages were "telephone solicitations", the FCC rejected a challenge as to the Do Not Call rules from professionals in the real estate industry:

> We also find no basis to further exempt certain entities or calls from the national do-not-call rules. The TCPA defines a telephone solicitation as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person but does not include a call or message to any person with that person's prior express invitation or permission; to any person with whom the caller has an established business relationship; or by a tax-exempt nonprofit organization." As with any entity making calls that constitute "telephone solicitations," **a real estate agent**, insurance agent, or newspaper **is** precluded from calling consumers registered on the national do-not-call list, unless the calls would fall within one of the specific exemptions provided in the statute and rules. Therefore, we clarify that a telephone solicitation would include calls **by real estate agents to property owners for the purpose of offering their services to the owner**, whether the property listing has lapsed or not.

*In Re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, GC Docket No. 02-278, 70 FR 19330, 19331 (F.C.C. 2005) (emphasis added).

24. Like real estate agents, GVG solicits its cash home-buying services to homeowners. Upon information and belief, GVG's services include:

- Cash home-buying services, which purport to turn real property into immediate cash;
- Arranging for title and escrow services to be provided to the homeowner/seller;[1] and
- Facilitating or assisting with legal aspects of the home sale, such as the transfer of title and the real estate purchase contract.

---

[1] Plaintiff understands this to be the case because GVG's website prohibits the use of traditional real estate agents, which necessitate services traditionally provided by real estate agents be provided by GVG in connection with its home buying services.

25. While on its face, GVG is offering to *purchase* homes from homeowners, it is also effectively charging homebuyers a "fee."

26. Specifically, GVG excludes traditional real estate agents from its homebuying transactions. Ex. B, p. 1 ("By completing the home information form on this site, you agree that… 3. You do not have an exclusive contractual or other arrangement with any real estate professional.") Doing so enables GVG to buy homes at a discount, with the money typically paid by homebuyers to real estate agents in the form of commission, instead being passed on to GVG, in the form of a discount on the purchase price.

27. Furthermore, the text messages sent to Pepper reflect that GVG offers to buy homes in poor shape (despite the fact Pepper and her husband take excellent care of their home), which would otherwise cost the homeowner money for rehabilitation of the home before a traditional listing is placed. *See* Ex. C, p. 6, text message 4/11/2021 ("No need to fix that leaky faucet, we'll buy as is, stress free.")

28. Instead of homeowners paying money to contractors, painters and/or plumbers, homeowners pay an effective fee to GVG by selling homes "as-is" at a discount.

29. For those reasons, and presumedly other reasons which Plaintiff will learn in the course of discovery, GVG was soliciting services for an effective fee.

30. Defendant's text messages were not made for "emergency purposes."

31. Plaintiff did not consent to receive communications from Defendant and never sought assistance from any business in recent years in connection with the sale of her home.

32. Plaintiff received the unwanted solicitation text messages on instances including, but not limited to, the following:

- April 6, 2022 at 5:47 PM from 1-812-974-3475
- April 7, 2022 at 7:16 PM from 1-301-664-0424
- April 8, 2022 at 7:20 PM from 1-203-904-6893
- April 9, 2022 at 4:47 PM from 1-505-755-1479
- April 11, 2022 at 6:24 PM from 1-712-448-5902
- May 8, 2022 at 2:48 PM from 1-305-927-4588
- May 9, 2022 at 2:01 PM from 1-216-856-4773
- May 9, 2022 at 5:51 PM from 1-702-978-2664
- May 10, 2022 at 6:04 PM from 1-626-759-3849
- May 12, 2022 at 2:09 PM from 1-917-605-2487
- May 13, 2022 at 8:27 PM from 1-917-621-1611
- May 14, 2022 at 10:15 AM from 64088 (short code)
- May 14, 2022 at 10:32 AM from 1-949-288-2389
- May 14, 2022 at 11:03 PM from 1-702-849-7269
- May 15, 2022 at 4:00 PM from 1-626-944-5651
- June 6, 2022 at 5:04 PM from 1-917-893-1242
- June 25, 2022 at 4:27 PM from 1-708-979-4113
- July 31, 2022 at 4:32 PM from 1-360-472-3096

A true and correct copy of the foregoing text messages is attached as Exhibit "C."

33.     Plaintiff believes and therefore avers she received additional text messages not included in the above list.

34.     On April 10, 2022, in response to the April 9, 2022 text message, Plaintiff made

it known that the texts were unwanted by writing back:

> You do know that I never signed up or filled out any form and byrepeatedly contacting me you are breaking the law?

*See* Ex. C, 4th text message.

35. In addition to the aforementioned April 10, 2022 message, Pepper responded: "NO", "STOP" or "END" to various solicitation texts, per instruction from Defendant as how to "opt out" (of messages for which she never "opted in"). Those texts stating "no", "stop" or "end" were sent on dates including May 10, 2022, May 13, 2022, May 14, 2022 and June 25, 2022. *See* Ex. C.

36. Nonetheless, Defendant's solicitation texts did not stop upon the clear instruction from Plaintiff.

37. Pepper knows the texts came from "WeBuy-Homes-4Cash.org" because each of the text messages contained links to the WeBuy-Homes-4Cash.org webpage.

38. The aforementioned communications from Defendant were irritating, distracting and an invasion of Plaintiff's privacy.

## COUNT I
## **DEFENDANT VIOLATED 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)**
**(Federal Do Not Call Registry)**

39. Plaintiff incorporates the forgoing paragraphs as though the same were set forth atlength herein.

40. The TCPA prohibits any person or entity of initiating any telephone solicitation a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c); 47 C.F.R. 64.1200(c).

41. Defendant sent two or more solicitation texts to Plaintiff in a single year despite the fact that Plaintiff's number has been on the Do Not Call Registry since December 15, 2004.

42. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law.

43. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

44. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

## COUNT II
## DEFENDANT VIOLATED 47 U.S.C. § 227(c) and CFR 64.1200(d)
(Internal Do-Not-Call List)

45. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

46. Section 227(c) of the TCPA prescribes that the FCC shall enact regulations to protect residential telephone subscribers' privacy rights.

47. Through those powers delegated by Congress, the FCC promulgated regulations including CFR 64.1200(d) which provides in relevant part:

> (d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (2) Training of personnel engaged in telemarketing.

8

> Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> ***************
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

48. A private right of action exists for failing to maintain meaningful internal do-not-call policies.

49. Plaintiff sent text messages to Defendant to stop on multiple occasions, to no avail, even after 30 days had passed from the initial cease and desist message.

50. Accordingly, it is clear Defendant did not maintain or enforce a meaningful internal do not call policy.

51. Defendant violated Plaintiff's rights under § 227(c)(5) and CFR § 64.1200(d) through the aforementioned acts and omissions.

52. Defendants' violations were knowing and willful.

53. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

54. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

**Wherefore**, Plaintiff, **Terri Pepper,** respectfully prays for judgment as follows:

a. All actual damages Plaintiff suffered, as provided under 47 U.S.C. § 227(c)(5);

b. Statutory damages of $500.00 per violation, as provided under 47 U.S.C. § 227(c)(5)(B);

c. Additional treble damages of $1,500.00 per violation, as provided under 47 U.S.C. § 227(c)(5)(C);

d. Injunctive relief, as provided under 47 U.S.C. § 227(c); and

e. Any other relief this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

**Please take notice** that Plaintiff, **Terri Pepper,** demands a jury trial in this case.

Respectfully submitted,

KIMMEL & SILVERMAN, P.C.

By: */s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
SDTX Attorney ID No. 3568914
30 East Butler Ave.
Ambler, PA 19002
Direct Phone Line: 267-468-5374
Facsimile: 877-788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

DATED: February 23, 2023

CERTIFICATE OF SERVICE

I, Jacob U. Ginsburg, Esq. hereby certify that the foregoing was served on all parties of record via ECF on February 23, 2023.

*/s/ Jacob U. Ginsburg*

10

SECOND AMENDED COMPLAINT