IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TERRI PEPPER, § § Plaintiff, § § v. § GVG CAPITAL LLC d/b/a WeBuy-Homes- § 4Cash.org, § § Defendant. § | CIVIL ACTION NO. H-22-2912 |

**MEMORANDUM AND OPINION**

The issue presented by GVG Capital LLC's motion to dismiss is whether its telephone calls and messages to Terri Pepper about her real property make it potentially liable under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. For the following reasons, the court denies the motion to dismiss.

**I.     Legal Standard**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted lawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Proj., Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

**II.     Analysis**

The court previously dismissed Pepper's TCPA claims because she failed to allege that GVG Capital's offers to buy her home were, in substance, offers to sell services. (Docket Entry No. 32 at 5). Offers to purchase (that is, encouragements to sell) are generally not prohibited by the TCPA. *See* 47 C.F.R. § 64.1200(f)(15) (defining "[t]elephone solicitations" as calls or messages made "for the purpose of encouraging the purchase or rental of, or investment in" property, goods, or services); *id.* § 64.1200(f)(13) (defining "[t]elemarketing" in the same terms).

The court contrasted Pepper's allegations to those at issue in *Anderson v. Catalina Structured Funding, Inc.*, 2021 WL 8315006 (W.D. Mich. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 3643733 (W.D. Mich. Aug. 24, 2022)). The defendant in *Anderson*, Catalina, purchased structured settlement rights for lump sums. The *Anderson* court

2

reasoned that Catalina's offers to purchase settlement rights implicitly contained offers to sell the services associated with the purchase: "processing payment applications, computing the present value of the structured settlement, filing all necessary legal documents, and the like." *Id.* at *5. It did not matter that the fees for these services took the form of a discount on the lump-sum payment and were not directly charged to the seller; the substance of the two kinds of transaction was the same. *Id.* This court found *Anderson*'s reasoning persuasive but inapplicable to the facts pleaded in the first amended complaint:

> In *Anderson*, Catalina was both the service provider and the purchaser. The same cannot be said of GVG Capital. Pepper alleges only that "Defendant is a real estate lead generator in the business of acquiring consumer data to assist investors and realtors buy and sell homes, for profit." Pepper alleges that GVG Capital acts "on behalf of real estate agents and investors." Pepper does not allege that a consumer pays for any part of the services GVG Capital offers, whether through the payment of fees or by providing data at a discount. GVG Capital's website is "WeBuyHomes4Cash," but the complaint does not allege that GVG Capital offers to purchase homes, in contrast to the role Catalina played in purchasing structured settlements. Pepper alleges only that GVG Capital seeks to acquire data on behalf of others seeking to purchase structured settlements. The allegations do not support an inference that GVG Capital is offering a service to Pepper in exchange for any payment.

(Docket Entry No. 32 at 5–6 (citations omitted)).

Pepper argues that the allegations of her second amended complaint cure the issues identified by the court. The second amended complaint explicitly alleges that GVG Capital's business consists of buying homes for cash, rather than merely accumulating information on available properties for potential buyers and agents:

> Like real estate agents, GVG solicits its cash home-buying services to homeowners. Upon information and belief, GVG's services include:
>
> \*       Cash home-buying services, which purport to turn real property into immediate cash;
>
> \*       Arranging for title and escrow services to be provided to the homeowner/seller; and

3

> \*      Facilitating or assisting with legal aspects of the home sale, such as the transfer of title and the real estate purchase contract.

(Docket Entry No. 33 ¶ 24). Pepper alleges that GVG Capital's "exclu[sion] of traditional real estate agents from its homebuying transactions . . . . enables GVG to buy homes at a discount, with the money typically paid . . . to agents . . . instead being passed on to GVG, in the form of a discount on the purchase price." (*Id.* ¶ 26). Pepper further alleges that GVG Capital's "offers to buy homes in poor shape" means that homeowners "pay an effective fee to GVG by selling homes 'as-is' at a discount." (*Id.* ¶ 27–28).

The court is not persuaded that an offer to buy a home "as-is" amounts to a solicitation prohibited by the TCPA. Pepper does not plead that a seller would ordinarily be required to perform repairs before listing her home. While these repairs might affect the sale price to the extent that they increase the home's value, any repairs a purchaser makes after the property is sold are independent of the sale transaction itself. *Cf. Suttles v. Facebook, Inc.*, 461 F. Supp. 3d 479, 483 (W.D. Tex. 2020) (cited in Docket Entry No. 34 at 6) ("By alleging that Facebook sent Suttles text messages merely to help the company engage in commercial transactions with *others* who might purchase advertisements on the website's platform, he admits that Facebook was not soliciting *him*, as is required by the plain language of the Act."); *Schulz v. Infogroup, Inc.*, No. 3:19-CV-1620-N, 2020 WL 4201636, at \*3 (N.D. Tex. July 21, 2020) (same scenario of calls made in furtherance of caller's ability to market to third parties).

By contrast, Pepper's allegations that GVG Capital provides the necessary services associated with a real estate transaction, and that the seller effectively pays for those services through GVG Capital's payment of a discounted purchase price, are sufficient to state a claim. Unlike repairs made to the property, the transfer of title is part of the sale transaction. To sell property, one or both parties to the sale must pay certain transaction costs. Pepper alleges that

4

GVG Capital pays those costs out of the funds that would otherwise be paid to the seller. GVG Capital argues that this "effective fee" is not an "*actual* fee." (Docket Entry No. 34 at 2). This argument makes a distinction without a difference—Pepper would pay that fee whether she made the payment directly or indirectly, by discounting the sale price. The court assumes, as it must on this motion to dismiss, that Pepper's allegations about the structure of real estate transactions are true. The allegations state a claim for violations of the TCPA.

The cases GVG Capital cites do not compel a different conclusion. Those cases concerned scenarios in which the callers might receive a benefit distinct from any purchase by the call's recipient. *Suttles*, 461 F. Supp. 3d at 483 (calls made to encourage the use of the caller's service that would ultimately benefit the caller's ability to market to third parties); *Schulz*, 2020 WL 4201636, at *3 (same); *Morris v. Unitedhealthcare Ins. Co.*, 2016 WL 7115973, at *9 (E.D. Tex. Nov. 9, 2016) (calls made to alert recipients of existing benefits under their health plans were not solicitations, even if the customer's awareness of those benefits would increase the perceived value of those health plans).

GVG Capital also argues that text messages are not actionable under the TCPA provisions at issue. It points to the FCC's 2023 notice of proposed rulemaking, made under the agency's TCPA authority, clarifying that the agent "has never stated that text messages are subject to [do not call list] protections." (quoted in Docket Entry No. 34 at 11). GVG Capital also points to the text of 47 C.F.R. § 64.1200, which refers to "text messages" only in certain contexts. GVG Capital argues that because the FCC has never "stated" that text messages are telemarketing under the FTCA means that text messages are not covered. (*Id.*). This argument fails in the face of the statutory text, which refers to "telephone call[s] or message[s]," 47 U.S.C. § 227(c), the applicable

5

regulations, and the decisions of the various courts to consider the issue. (*See* Docket Entry No. 36 at 22–23 (collecting cases)).

GVG Capital argues that those decisions are inapposite and observes that, while some portions of 47 C.F.R. § 64.1200 explicitly refer to "*text* messages," the portions of the regulation under which Pepper sues do not. The bulk of the § 64.1200 references to "text messages" involve exceptions to certain of the TCPA's prohibitions. *See* 47 C.F.R. § 64.1200(a)(9) ("A person will not be liable for violating the prohibition in paragraph (a)(1)(iii) of this section for making any call exempted in this paragraph (a)(9), provided that the call is not charged to the called person or counted against the called person's plan limits on minutes or texts. As used in this paragraph (a)(9), the term "call" includes a text message, including a short message service (SMS) call."). There is no need to explicitly exempt text messages from a regulation that does not otherwise encompass them. *See, e.g.*, *Fla. Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1327 (11th Cir. 2001) ("That is, if the definition of "contribution" in § 106.08(5) itself does not encompass ordinary gifts of money and donations, it would have been unnecessary to articulate exceptions for types of contributions that already are exempted in the first instance as a matter of definition."); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("[C]ourts should disfavor interpretations of statutes that render language superfluous . . . ."). GVG Capital does not argue that superfluous language was included in the regulation to "make assurance doubly sure." *Crandon v. United States*, 494 U.S. 152, 174 (1990) (Scalia, J., concurring in the judgment). The remaining references to "text messages" in § 64.1200 address the obligations of "mobile wireless providers" to block text messages and do not prohibit the soliciting entities themselves. *Id.* § 64.1200(p) & (r). The FCC's notice of proposed rulemaking is consistent in stating that "the Commission has stated that text messages are calls for Telephone Consumer Protection Act (TCPA) purposes." *Targeting and*

*Eliminating Unlawful Text Messages*, 88 Fed. Reg. 20800, 20802 ¶ 6 (proposed April 7, 2023) (to be codified at 47 C.F.R. § 64).

### III.     Conclusion

The court denies the motion to dismiss the second amended complaint. (Docket Entry No. 34).

SIGNED on June 9, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge